# EMPLOYMENT AGREEMENT

This Employment Agreement is made effective as of the 1st day of March, 2002, by and between **Children's Hospital Medical Center**, an Ohio non-profit corporation (the "Medical Center"), and **Charles T. Mehlman, D.O., MPH.** (the "Physician").

The parties agree as follows:

1. **Employment Relationship.** The Physician shall be an employee of the Medical Center and shall devote Physician's full time and best efforts to the practice of medicine (including patient care, teaching, and research) at the Medical Center during the term of this Agreement. The initial term of this Agreement shall commence on July 1, 2002, and shall terminate on June 30, 2004, unless earlier terminated as provided herein (the "Initial Term"). This Agreement automatically shall renew for additional one (1) year periods (a "Renewal Period") unless either party provides written notice of termination not later than six (6) months prior to the expiration of the Initial Term or any Renewal Period.

2. **Compensation.** In consideration of the services rendered by Physician pursuant to this Agreement, and for so long as Physician remains an employee of the Medical Center, Physician shall receive compensation in accordance with the terms of the Pediatric Orthopaedics Practice Plan (the "Practice Plan"). It is agreed that Physician's total compensation represents fair, full and complete compensation to Physician for the services rendered to and on behalf of the Medical Center during Physician's employment. Pursuant to Section V.I. of the Practice Plan, your CHMC and UC (if any) annual guaranteed compensation through December 31, 2003 will be three hundred ninety-three thousand dollars ($393,000), provided there are no significant changes in your effort over this timeframe.

3. **Exclusive Services.** All medical practice accepted or undertaken by Physician shall be for the benefit of the Medical Center. Physician may not undertake any other medical practice or collateral activities except with the full knowledge and prior written consent of the Medical Center. In the event any other medical practice is undertaken by Physician without the knowledge and/or prior written consent of the Medical Center, Physician hereby agrees to defend, indemnify and hold harmless the Medical Center (and its officers, trustees and other employees) from any obligation, liability, claim, cause of action or expense (including, without limitation, attorneys fees) arising out of or related to such other practice to the extent not fully covered by insurance held by the Medical Center. Physician agrees that, as a condition of Physician's employment by the Medical Center, the Medical Center has the exclusive right to receive payment for Physician's professional services rendered pursuant to this Agreement. Except as otherwise agreed upon in writing by the Medical Center, any monies remitted to Physician (whether by cash or check) in consideration of professional services rendered by Physician shall be deposited as soon as possible after receipt with the Medical Center. Physician may retain any honoraria received for speaking engagements, teaching, or publications. Physician appoints the Medical Center as Physician's attorney-in-fact to endorse in Physician's name any checks received by the Medical Center (a) for Physician's services on its behalf, or (b) as a refund of insurance premiums paid by the Medical Center.

4.     **University Faculty Appointment.** Physician shall maintain Physician's faculty appointment in the Department of Orthopaedics (the "College Department"), the University of Cincinnati College of Medicine (the "College of Medicine").

5.     **Duties of Physician.**

(a)     **General Duties.** Physician is hereby engaged as a full-time employee. Physician shall devote substantially Physician's entire professional time and attention to the practice of medicine, to basic and/or clinical research in relevant clinical areas, to medical education, and to the administration and development of orthopaedic services at the Medical Center, and to such other duties as may be requested by the President and Chief Executive Officer and/or the Surgeon-in-Chief, or the Division Director.

(b)     **Schedule.** Physician shall provide medically necessary services for patients in accordance with schedules established by the Medical Center. Physician will also provide inpatient hospital care, and conduct regular hospital rounds, as reasonably established by the Medical Center. Physician agrees to be on call for emergency care at times reasonably established by the call group in which Physician is participating. Physician will provide an emergency telephone number where Physician can be reached after hours, and will be readily available when on-call to respond in a timely fashion to the Medical Center.

(c)     **Policies.** Physician shall comply with all written policies, procedures, rules and regulations of the Medical Center, including, but not limited to, the Medical Center's Compliance Program and agrees to sign the Intellectual Property Agreement attached as Appendix 1 hereto, upon execution of this Agreement.

(d)     **Specific Duties.** In addition to the general duties of Physician set forth above, Physician shall have the following specific duties:

(i) **Education; Board Certification.** Physician shall devote a sufficient amount of time each year to attend medical meetings, postgraduate seminars, refresher courses and obtaining other adequate continuing medical education to maintain a license to practice medicine in the State of Ohio. Physician shall remain board eligible or board certified by the American Osteopathic Board of Orthopaedic Surgery.

(ii) **Reports and Records.** Physician shall prepare and maintain, or cause to be prepared and maintained, all reports, claims, correspondence and records relating to all professional services rendered under this Agreement, all of which shall be the property of the Medical Center. Physician further agrees to prepare and maintain, or cause to be prepared and maintained, all records and reports in accordance with all federal and state statutes and regulations and all policies adopted by the Medical Center. Physician agrees to cooperate fully with the Medical Center by keeping records and making available all necessary records required to assure that the Medical Center will be able to meet all requirements for participation and payment associated with government or private third party payment programs. Physician agrees that the Medical Center or an independent third party auditor may inspect any such records. The

Medical Center shall pay all administrative costs incurred in maintaining such reports, records, claims and correspondence.

(iii) **Professional Standards.** Physician shall comply with all legal and ethical standards relating to the practice of medicine, including all laws and regulations dealing with government programs and private insurance or prepaid health plans, all rules and regulations of any hospital, and hospital medical staff, at which the Physician practices medicine, and all policies, practices, rules and regulations of the Medical Center, including those policies, practices, rules and regulations as they apply to the supervision of Division personnel.

(iv) **Notice.** Physician shall immediately notify the Medical Center of any information received by Physician regarding cancellation of professional liability insurance maintained by the Medical Center on behalf of Physician or Physician's exclusion from or any sanction imposed by a governmental program (such as Medicare or Medicaid). Physician timely shall advise the Medical Center of any information about which Physician becomes aware which Physician has reason to believe may lead to (1) a claim against the professional liability coverage maintained by the Medical Center on Physician's behalf; (2) termination, modification or suspension of Physician's medical staff privileges at a hospital or license to practice medicine in Ohio; or (3) a third party payor (whether government or private) questioning Physician's qualifications to provide services to patients or participate in any payor's reimbursement plans. For purposes of this subsection, timely is defined as ten (10) business days from the day Physician learns of such information.

(e) **Community Benefits.** Physician shall from time to time provide on behalf of the Medical Center reasonable amounts of community service agreed upon by Physician and Medical Center, including but not limited to providing health care educational programs to members of the community.

6.    **Professional Billing Services.** The Medical Center's Professional Billing Services Department will be responsible for all professional billing activities to ensure a sound charge capture, bill generation, account management, and revenue collection system. The Physician will cooperate fully to ensure the timely and accurate completion of charge capture documents. The Physician shall meet periodically, not less than annually, with such department to review necessary procedures and systems for efficient billing services.

7.    **Availability of Services.** Physician agrees to make medical services accessible in a manner that does not discriminate on the basis of race, sex, religion, national origin, place of residence, health status, ability to pay or source of payment for services rendered. Physician agrees to provide services to individuals who participate in the Medicaid or Medicare programs.

8.    **Independent Judgment.** Physician shall freely and independently exercise Physician's judgment in accordance with reasonable medical practice in the care and treatment of Physician's patients. Physician shall exercise Physician's skill, learning, intelligence and experience in the evaluation, diagnosis, medication, treatment and hospitalization of Physician's patients according

to Physician's informed judgment, and shall not be constrained in the exercise of Physician's independent judgment by the terms and conditions of this Agreement.

9.   **Benefit Plans.**   Subject to the applicable eligibility and participation requirements, Physician shall be eligible to participate in the Medical Center's or, if applicable, the University of Cincinnati's (the "University") benefit plans as more fully set forth in the Practice Plan. Physician acknowledges that such benefits are subject to change at the sole discretion of the Medical Center or, if applicable, the University.  Physician shall be eligible for continuation of Physician's salary and benefits for a period not to exceed ninety (90) days should the Physician become ill or disabled.

10.   **Professional Liability Coverage.** The Medical Center will provide professional liability coverage and assume financial responsibility for all professional liability claims that arise in connection with professional services rendered by Physician in the course of Physician's employment by the Medical Center, whether such claims are asserted or unreported during the term of Physician's employment and as set forth in the Practice Plan.  The Medical Center shall coordinate and control the defense and settlement of any malpractice claims. In the event Physician's employment by the Medical Center is terminated for any reason, any refund of Physician's professional liability coverage policy premiums (or other premiums paid for by the Medical Center) shall belong solely to, and shall be returned to, the Medical Center.

11.   **Termination of Agreement.**

(a) **Automatic Termination.**  Physician's employment shall automatically and without further action or notice be deemed terminated on the date when any of the following events occur:

(i)   Physician dies;

(ii)   Physician for any reason becomes disqualified to practice medicine in the State of Ohio;

(iii)   Physician's right to prescribe any controlled substance is terminated, suspended or modified; or

(iv)   Physician becomes disabled for more than ninety (90) days and is unable to perform the essential functions of Physician's job as determined by a physician qualified to make such a determination.

(b) **Termination for Cause.**  The Medical Center shall have the absolute right, at any time, upon the giving of written notice, to immediately terminate this Agreement and physician's employment by the Medical Center hereunder, upon the happening of any one or more of the following events:

(i)   Physician is expelled, suspended or otherwise disciplined by the

final action of any professional medical organization as a result of professional misconduct, and, in the good faith opinion of the Medical Center, the event will have an adverse effect on Physician's practice or on the Medical Center;

(ii)    Physician resigns from any professional medical organization under threat of disciplinary action for professional misconduct, and, in the good faith opinion of the Medical Center, the event will have an adverse effect on Physician's practice or on the Medical Center;

(iii)    Physician is convicted of a felony (whether as a result of trial or plea) or any crime of moral turpitude;

(iv)    Physician's medical staff privileges at any hospital (including the Medical Center) are denied, involuntarily terminated, suspended for in excess of thirty (30) days or materially modified for any reason;

(v)    Physician fails to notify the Medical Center of information pursuant to Section 5(d)(iv);

(vi)    Physician's participation in government funded medical insurance (e.g., Medicare) or medical programs (e.g., Medicaid or CHAMPUS) is suspended as a result of action by the Physician not authorized by the Medical Center.  (Physician may be considered for re-employment by the Medical Center at such time that Physician's eligibility to participate in all government funded programs is reinstated.);

(vii)    Physician is no longer board eligible or board certified by the American Osteopathic Board of Orthopaedic Surgery;

(viii)    a governmental agency makes a final determination with respect to action by the Physician not authorized by the Medical Center that there has been improper use of or prescription of controlled substances, improper or poor quality care, fraud, abuse, kickback, or prohibited referral related to a government health or insurance program, or violation of any state or federal statute or regulation;

(ix)    Physician's participation in a prepaid health plan or private health insurance payor plan is terminated or suspended for professional misconduct and such suspension is in excess of thirty (30) days and, in the good faith opinion of the Medical Center, the event will have an adverse effect on Physician's practice or on the Medical Center;

(x)    Physician's repeated failures to adhere to Medical Center written policies, procedures, and directives, not cured by Physician within ten (10) days of written notice same; or

(xi)    in the event there is a breach of any other material provision of this Agreement by Physician not cured by Physician within ten (10) days of written notice of same.

(c)     **Physician's Termination for Cause.**  Notwithstanding any term of this Agreement to the contrary, Physician may terminate this Agreement immediately upon giving the Medical Center written notice in the event that (i) this Agreement becomes the justification of or foundation for any investigation or challenge to Physician's license to practice medicine in the State of Ohio; or (ii) there is a material breach by the Medical Center which is not cured within ten (10) days of written notice of same.

(d)     **Termination Without Cause.**  Physician or Medical Center may terminate this Agreement without cause upon six (6) months prior written notice to the other party.

(e)     **Physician's Obligation Upon Termination.**  Upon termination of this Agreement, Physician shall return to the Medical Center any and all keys or identification which identifies Physician as an employee of, or associated with, the Medical Center.  Upon termination of this Agreement, Physician agrees that the Medical Center may open all mail received at the Medical Center which is addressed to Physician to determine who should receive the contents.  If the contents relate to the medical services the Physician provided to patients of the Medical Center or payment for medical services, the Medical Center is entitled to retain the contents of the mail.  To the extent permitted by law, the Medical Center shall provide copies to Physician.  Any releases or authorizations necessary in order for such copies to be provided to Physician must be obtained by Physician and presented to the Medical Center.  Physician is entitled to all mail received at the Medical Center which personally relates to Physician. All mail received at any other address which relates to the medical services provided to patients of the Medical Center or payment for medical services, shall be forwarded to the Medical Center.

(f)     **Violation of Laws or Regulations.**  If any activities contemplated in this Agreement are deemed by the Medical Center or Physician to be in violation of any lawfully adopted laws, procedures, rules, regulations, or policies of the State of Ohio or a federal government agency, including but not limited to the Department of Health and Human Services and the Internal Revenue Service: (i) this Agreement shall be modified and amended so as to comply with such laws, procedures, rules, regulations or policies; or (ii) if no such amendment or modification is agreed upon, the Medical Center or Physician may terminate this Agreement upon thirty (30) days' written notice to the other party.  Medical Center shall indemnify and hold harmless Physician from any obligation, liability, claim, cause of action or expense (including, without limitation, reasonable attorneys' fees) incurred by Physician and arising out of a violation that is the result of the Medical Center's acts or omissions or any investigation or challenge under Section 11(c)(i).

12.     **Records and Patient Files.**  All records and patient files (both any office patient records or hospital medical records) belong to and are the property of either the Medical Center or the facility where the services are performed.  Upon the termination of this Agreement, except as provided in this Section 12, Physician shall have no claim or right to access to the Medical Center's books, records, accounts, case histories and reports, patient lists, patient charts, files, memoranda, accounts receivable, office location, telephone number, the Medical Center's assets

or records. Notwithstanding the preceding sentence, upon the termination of this Agreement the Physician's right or ability to access patient records will be determined pursuant to the policies and procedures of the institution that owns the records. For legitimate purposes as determined in the reasonable discretion of the institution owning the record, Physician shall be entitled to inspect and copy medical records of patients with whom Physician worked while an employee of the Medical Center to the extent permitted by law and at reasonable times. Upon the termination of this Agreement, Physician shall have access to records to assist in an audit, investigation or peer review matter by the Medicare or Medicaid programs, and Physician agrees to assist the Medical Center with information needed to assist in a Medicare or Medicaid audit, investigation, or peer review matter.

13.    **Covenant Not to Compete.** (a) For a period of two (2) years following termination of Physician's employment for any reason or for no reason, including the expiration of the Initial Term or any Renewal Period, Physician agrees not to see, treat or consult with any patients, physicians or hospitals, or otherwise practice medicine in the specialty of orthopaedics, directly or indirectly, with or without remuneration, as principal, agent, employee, independent contractor, or otherwise, in the counties of Hamilton, Butler, Warren, and Clermont, Ohio; Kenton, Boone, and Campbell, Kentucky; and Dearborn, Indiana; provided, however, this paragraph shall not apply if this Agreement is terminated (i) by Physician under Section 11(c) or 11(f) , or (ii) by the Medical Center under Section 11(d) or 11(f).

          (b)       The purpose of the above covenant not to compete is to protect the Medical Center from the irreparable harm it will suffer if Physician competes in its territory after having been employed by the Medical Center and introduced to its referring physicians, hospital personnel, and patients, and after learning the Medical Center's special medical procedures, business procedures, office and practice policies and the special and confidential professional procedures developed by the Medical Center and its employed physicians and/or taught to Physician in the course of Physician's employment relationship. PHYSICIAN UNDERSTANDS THAT PHYSICIAN'S EMPLOYMENT IS OFFERED SUBJECT TO SUCH COVENANT NOT TO COMPETE AND PHYSICIAN FREELY ACCEPTS SUCH LIMITATION. Physician agrees that the Medical Center may obtain injunctive relief from a court in order to enforce the covenants set out in this Section

If any provision of this Section 13 relating to the restrictive period, scope of activity restricted and/or territory described therein shall be declared by a court of competent jurisdiction to exceed the maximum time period, scope of activity restricted or geographical area such court deems reasonable and enforceable under applicable law, Physician and the Medical Center agree that the time period, scope of activity restricted and/or geographical area of restriction held reasonable and enforceable by the court shall thereafter be the restrictive period, scope of activity restricted and/or the territory applicable to the restrictive covenant provisions of this Section. The parties agree that an injunction is not the Medical Center's exclusive remedy for breach of such sections

of the Agreement and that a court may also grant such damages as are reasonable and fair in addition to, or in place of, injunctive relief.

14.    **Confidential Information.**  Physician recognizes and acknowledges that confidential information may exist, from time to time, with respect to the business of the Medical Center and its affiliates.  This information includes, without limitation, concepts for the business, prices, mailing lists, customers and business plans.  Accordingly, Physician agrees that Physician will not, during or after the term of employment hereunder, disclose any confidential information relating to the business of the Medical Center or any of its affiliates to any individual or entity. The provisions of this Section shall not apply to the information which is or shall become generally known to the public (except by reason of Physician's breach of Physician's obligations hereunder), information which is or shall become available in trade or other publications or information which Physician is required to disclose by order of a court of competent jurisdiction (but only to the extent specifically ordered by such court and, when reasonably possible, Physician shall give the Medical Center prior notice of such intended disclosure so that it has the opportunity to seek a protective order if it deems it appropriate).

Without limiting the generality of the foregoing, Physician acknowledges and agrees that memoranda, notes, records and other documents made or compiled by Physician or made available to Physician during the term of this Agreement concerning the business of the Medical Center or any of its affiliates shall be the Medical Center's property and shall be delivered by Physician to the Medical Center upon termination of this Agreement or at any other time at the Medical Center's request.

Physician acknowledges that the services to be rendered by Physician are of a special, unique and extraordinary character, and in connection with such services, Physician will have access to confidential information vital to the Medical Center's business.  Accordingly, Physician consents and agrees that if Physician violates any of the provisions of this Section 14, the Medical Center would sustain irreparable harm, and therefore, in addition to any other remedies which the Medical Center may have under this Agreement or otherwise, the Medical Center may be entitled to apply to any court of competent jurisdiction for an injunction restraining Physician from committing or continuing any such violation of this Agreement.  Nothing in this Agreement shall be construed as prohibiting the Medical Center from pursuing any other remedy or remedies including, without limitation, recovery of damages.

15.    **Patient Solicitation Prohibited.**  Physician agrees that for two (2) years after termination of this Agreement including expiration and non-renewal, Physician will not solicit patients of the Medical Center which were seen while employed by Medical Center, and Physician will not contact Medical Center patients to encourage them to transfer their medical records or attending physician from the Medical Center to Physician or any other person, group or organization with which Physician might become affiliated.  In the event of Physician's departure from the Medical Center, the Medical Center will notify Physician's patients of the Physician's departure from the Medical Center and supply appropriate continuity of care information.

16.    **Non-Interference with Contracts.**  Physician agrees that after employment with the Medical Center terminates, any and all contracts for professional services between the Medical Center and other persons or organizations will remain in the sole possession of the Medical Center.  Physician shall not encourage or solicit other employees, physicians or allied health

professionals of the Medical Center to leave their employment to join in Physician's outside practice.

17. **Equitable Relief.** Physician agrees that no adequate remedy at law exists which would fairly compensate the Medical Center for Physician's breach of any covenants contained in Sections 15 and 16 of this Agreement. Accordingly, Physician consents and agrees that if Physician violates any of the provisions of such sections, the Medical Center would sustain irreparable harm, and therefore, in addition to any other remedies which the Medical Center may have under this Agreement or otherwise, the Medical Center may be entitled to apply to any court of competent jurisdiction for an injunction restraining Physician from committing or continuing any such violation of this Agreement. Nothing in this Agreement shall be construed as prohibiting the Medical Center from pursuing any other remedy or remedies including, without limitation, recovery of damages.

18. **Miscellaneous.**

(a) **Section Headings.** The section headings in this Agreement are for convenience only and are not intended to govern, limit, or affect the meanings of the sections.

(b) **Warranty.** Physician and Medical Center represent and warrant to other party that each party is not under any obligation to any other party inconsistent with or in conflict with this Agreement or which would prevent, limit or impair in any way performance of each party's obligations hereunder.

(c) **Agreement.** This constitutes the entire understanding between Physician and the Medical Center with respect to the subject matter hereof and supersedes any and all prior understandings, written or oral.

(d) **Amendments.** No amendments or additions to this Agreement shall be binding unless in writing and signed by the party to be charged, except as may herein otherwise be provided.

(e) **Waiver.** Failure to insist upon strict compliance with any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of such right or power at any other time or times.

(f) **Severability.** Except as otherwise provided in this Agreement, if for any reason any provision of this Agreement shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable, the validity and enforceability of the remainder of the Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law, and, in its modified form, such provision shall then be enforceable and enforced.

(g) **Benefit and Assignability**. This Agreement is personal in its nature and shall inure to the benefit of and be binding upon the respective parties, their heirs, personal representatives, and assigns. Neither of the parties hereto shall assign or transfer this Agreement or any rights or obligations hereunder without the consent of the other; provided, however, that the Medical Center may assign or transfer this Agreement to any other entity affiliated with the Medical Center, provided that in the case of any such assignment or transfer, this Agreement shall, subject to the provisions hereof, be binding upon and inure to the benefit of such successor corporation or entity and such successor corporation or entity shall discharge and perform all of the obligations of the Medical Center hereunder.

(h) **Notices**. All notices required to be given under the terms of this Agreement shall be in writing, shall be effective upon receipt, and shall be delivered to the addressee in person or mailed by certified mail, return receipt requested.

(i) **Governing Law**. This Agreement shall be governed by the laws of the State of Ohio. In the event of any claim or cause of action arising from this Agreement, the parties hereto consent to the jurisdiction of the federal and/or state courts of Hamilton County, Ohio.

(j) **Resolution of Disputes**. The parties shall attempt in good faith to resolve promptly any dispute arising out of or relating to this Agreement by negotiation between Physician and an employee of the Medical Center who has authority to settle the dispute. Any party may give the other party written notice of any dispute not resolved in the normal course of business which notice shall contain a statement describing the dispute and such party's position. Within fifteen (15) days after delivery of such notice, the receiving party shall submit to the disputing party a written response. The notice and the response shall include a statement of the party's position and a summary of arguments supporting that position. Within twenty (20) days after delivery of the disputing party's notice, both parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. If the dispute is not resolved within sixty (60) days after the giving of notice by the disputing party, either party may thereafter pursue such legal or equitable relief as may be available.

(k) **Compliance With Laws**. The Medical Center shall comply with all legal and ethical standards relating to the practice of medicine and applicable to hospitals, including all laws and regulations dealing with government programs and private insurance or prepaid health plans.

(l) **Survival**. Sections 11(e), 12, 13, 14, 15, 16, 17, 18(i), (j) (k) and (l) shall survive termination of this Agreement.

**IN WITNESS WHEREOF,** the parties have signed this Agreement effective as of the day and year first above written.

**CHILDREN'S HOSPITAL
MEDICAL CENTER**

**PHYSICIAN**

By: _____

      James M. Anderson
      President & Chief Executive Officer

By: _____

      Charles T. Mehlman, D.O., MPH.

      3-26-02

By: _____

      Richard G. Azizkhan, M.D.
      Surgeon-in-Chief

By: _____

      Alvin H. Crawford, M.D.
      Division Director

APPENDIX 1

# CHILDREN'S HOSPITAL MEDICAL CENTER
# INTELLECTUAL PROPERTY AGREEMENT

In consideration of my employment or other engagement as a contractor or consultant ("engagement") by Children's Hospital Medical Center ("CHMC") or Children's Hospital Research Foundation ("CHRF"), or my utilization of CHMC or CHRF facilities or resources, or the salary, wages or other payments made to me, I agree as follows:

1.    **Ownership of Intellectual Property.** CHMC shall be the exclusive owner of all trademarks, trade secrets, copyrightable materials, and each invention, device, process, or product, including, without limitation, all research results, innovations, improvements or alternative applications (collectively hereinafter referred to as "Intellectual Property"), conceived or developed by me, solely or jointly with others, during the period of my employment or other engagement with CHMC or CHRF or (a) that result from, are suggested by or relate to any work that I have done or may do for CHMC or CHRF, (b) as to which I have received or may receive information as a result of my employment or engagement by CHMC or CHRF, or (c) that have involved or hereafter involve utilization of CHMC or CHRF resources, facilities, time or materials (including, without limitation, performance of sponsored research made available to me by CHMC or CHRF) or collaboration with employees or independent contractors of CHMC or CHRF. I understand and shall comply in all respects with the *Policy on Inventions, Patents and Intellectual Property* adopted by CHMC and CHRF, as such policy may be amended from time to time.

2.    **Disclosure and Assignment.** I shall disclose and furnish to CHMC or CHRF complete information regarding all Intellectual Property. I shall prepare and maintain accurate written records of all Intellectual Property in accordance with CHMC or CHRF procedures established from time to time and as necessary to enable CHMC and CHRF to perform their obligations to grantors of funds for research or contracting agencies. I hereby assign to CHMC all right, title and interest in the Intellectual Property now existing or hereafter coming into existence, and agree to execute any additional documents and do all things necessary or appropriate, during and after my employment or engagement, to vest and confirm all rights in the Intellectual Property in CHMC and to facilitate the obtaining by CHMC of any desired legal protection for the Intellectual Property in any countries. Any documents or actions described in the preceding sentence shall be prepared, filed or taken at CHMC's expense, but I agree to sign such documents and otherwise to cooperate at no cost to CHMC beyond any compensation otherwise payable in connection with my employment or engagement.

3.    **Confidential Information.** I acknowledge that the Intellectual Property constitutes trade secrets and proprietary information of CHMC and CHRF. The term "Confidential Information", as used in this Agreement, includes (a) all of the Intellectual Property, (b) any other information disclosed to me or discovered by me in connection with my work for CHMC or CHRF and (c) information of any third party disclosed to me through CHMC or CHRF, which CHMC or CHRF is

obligated to keep confidential. "Confidential Information" does not include any information that CHMC or CHRF releases to the general public.

4. **Nondisclosure.** I shall not use Confidential Information other than for the benefit of CHMC or CHRF, and I shall not disclose Confidential Information to any other person except as authorized by CHMC or CHRF or required by law. I agree not to remove from the premises of CHMC and CHRF any Confidential Information except as authorized by CHMC or CHRF. At the request of CHMC or CHRF, or upon any termination of my employment or engagement, I shall deliver promptly to CHMC or CHRF all Confidential Information in a tangible form then in my possession. I understand that all of my obligations under this Section 4 continue indefinitely after my employment or engagement with CHMC or CHRF ends.

5. **Remedies.** I agree that CHMC or CHRF shall be entitled, in addition to any other remedies and damages available, to an injunction to restrain the violation of the provisions of this Agreement.

6. **Binding Agreement.** This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors, assigns and legal representatives.

7. **Governing Law; Jurisdiction.** This Agreement shall be governed by the laws of the State of Ohio. The parties hereby submit to personal jurisdiction of the courts situated in Hamilton County, Ohio, as the venue for resolution of any disputes arising pursuant to or relating to this Agreement.

_____
Signature

CHARLES T MEHLMAN
Printed Name

Date: 3/26/02

Accepted:

Children's Hospital Medical Center/Children's Hospital Research Foundation

By:_____

Title:_____

Date:_____

2